IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARKISE JONES**  **PLAINTIFF**
**#118295**

V.  NO. 4:22-cv-01281-KGB-ERE

**RODNEY WRIGHT**, *et al.*[1]  **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.**     **Procedures for Filing Objections:**

This Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.**     **Background:**

*Pro se* Plaintiff Markise Jones, an Arkansas Division of Correction inmate,

---

[1] **The Clerk is instructed to update the docket sheet to reflect these Defendants' correct titles and names – Deputy Makayla McKinnon, Lieutenant Courtney Burrus, Sergeant Wesley Finch, Deputy Audrey Reed, and Deputy Jacob Terry.**

filed this civil rights lawsuit under 42 U.S.C. § 1983, claiming that he suffered constitutional deprivations during his pre-trial detention at the Saline County Detention Facility ("Detention Facility"). In his complaint and amended complaint, Mr. Jones alleges that Defendants Deputy Makayla McKinnon, Lieutenant Courtney Burrus, Sergeant Wesley Finch, Deputy Audrey Reed, and Deputy Jacob Terry failed to protect him from an inmate attack.[2] *Docs. 2, 18*. He sues these Defendants in both their individual and official capacity seeking money damages.

Pending before the Court is Defendants' motion for summary judgment, brief in support, and statement of undisputed facts. *Docs. 40, 41, 42*. Mr. Jones has not responded to the motion and the time for doing so has passed.[3] *Doc. 43*. Accordingly, the motion is ripe for review.

For the reasons explained below, the Court recommends that Defendants' motion for summary judgment (*Doc. 40*) be granted and Mr. Jones' claims be

---

[2] The Court previously dismissed Mr. Jones' claims against Sheriff Rodney Wright, Captain Gilliam, and Jennifer Hallman, as well as his claims regarding Defendants' interference with the inmate grievance procedure. *Doc. 25*.

[3] On October 16, 2023, Mr. Jones filed a notice stating that Defendants failed to provide him "video and audio footage that Saline County Jail has in this case." *Doc. 44*. If, with his notice, Mr. Jones is asking the Court to delay a summary judgment ruling, he fails to satisfy the requirements of Rule 56(d) of the Federal Rules of Civil Procedure, which requires him to identify specific unavailable facts essential to resist summary judgment. See *Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016) (holding trial court properly denied request to delay summary judgment where inmate/plaintiff failed to provide an affidavit demonstrating how the postponement of a ruling would enable him to show genuine issues for trial). Rule 56(d) does not condone a fishing expedition where a party merely hopes to uncover some possible evidence of unlawful conduct. *Id.*

dismissed, with prejudice.

### III.   Discussion:

#### A.   Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

#### B.   Undisputed Factual Allegations[4]

On November 14, 2022, around 3:30 p.m., unidentified Detention Facility

---

[4] Unless otherwise specified, these facts are taken from Mr. Jones' complaint, amended complaint, and deposition testimony. *Docs. 2, 18, 42-7.*

staff members moved Mr. Jones from H-Pod to D-Pod for an unknown reason. *Doc. 18-1 at 2; Doc. 42-7 at 11*. Mr. Jones recalls that he felt unsafe in D-Pod, as though his life were in danger, and he asked Defendant McKinnon to move him to a "safer" pod. *Doc. 2 at 6*. Defendant McKinnon responded that, if she moved him, he would have to be housed in intake 1 holding cell (lock down) for the rest of his detention. *Id*.

Sometime later, Mr. Jones asked Defendant Burrus if he could speak with her. *Doc. 2 at 6; Doc. 42-7 at 11*. When Defendant Burrus arrived at shift change, she told Mr. Jones to pack his belongings. *Doc. 2 at 6; Doc. 18-1 at 2-3; Doc. 42-7 at 11*.

Officers then moved Mr. Jones to C-Pod, which had two levels. *Doc. 18-1 at 3*. Mr. Jones looked for a place to sleep in his new pod and spotted three open beds upstairs. *Doc. 2 at 6*. However, when Mr. Jones went upstairs, another inmate approached him and, by pointing, indicated that he should sleep on the floor, rather than in the open bed. *Id*.; *Doc. 42-7 at 12-13*. Mr. Jones responded, "no," and walked to what he believed to be an open bed. *Doc. 2 at 6; Doc. 42-7 at 13*. Before Mr. Jones reached the open bed, another inmate laid down on it, and Mr. Jones "immediately felt unsafe." *Doc. 2 at 6, Doc. 18-1 at 3*.

Mr. Jones then went downstairs and pressed the "button" to request another move. *Doc. 2 at 7; Doc. 18-1 at 3; Doc. 42-7 at 13*. However, Detention Facility

staff did not respond. *Doc. 42-7 at 13*. While Mr. Jones was downstairs, inmates upstairs began throwing his property over the rail. *Doc. 2 at 7; Doc. 18-1 at 3*. Mr. Jones then ran upstairs and hit the inmate that was throwing his property. *Doc. 18-1 at 3*. At that time, other inmates "jumped on [him]" (*Doc. 2 at 7*) and attacked him for seven or eight minutes. *Doc. 42-7 at 14*.[5] According to Mr. Jones, the fighting stopped because he was bleeding "real bad from [his] face." *Id. at 15*.

After the attack stopped, Defendants Burrus, Finch, and Reed arrived. *Doc. 2 at 7; Doc. 42-7 at 15*.

Following the incident, officers restrained Mr. Jones and transported him to "medical" to receive treatment and take photographs of his injuries. As a result of the altercation, Mr. Jones suffered an injury to his eye. *Doc. 42-7 at 16*.

Mr. Jones alleges that Defendants failed to protect him because they assigned him to "a barracks where inmates[were] plotting [heinous] acts against [him] . . . because of [his] charge." *Doc. 18- at 2*. According to Mr. Jones, another inmate told him that Defendant Terry watched the entire incident take place on a video monitor in the control booth but failed to take any action. *Doc. 2 at 7; Doc. 18-1 at 3; Doc. 42-7 at 17*.

Mr. Jones testified in his deposition that he did not know any of the inmates

---

[5] Mr. Jones originally stated that the inmate attack lasted "about" fifteen minutes. *Doc. 2 at 7*.

5

in C-Pod, and he acknowledged that he did not think that Detention Facility staff were aware of any specific problems he had or would have with any C-Pod inmate. *Doc. 42-7 at 19*. Mr. Jones testified that he did not know: (1) whether Defendant Burrus, Defendant Finch, and Defendant Reed were aware of the attack before they arrived in C-Pod (*Doc. 42-7 at 23, 26*); or (2) whether or by what means any Detention Facility officer became aware that he was being attacked. *Doc. 42-7 at 15*. He stated that "whoever was supposed to be watching the cameras, they should have notified them when they [saw inmates] throwing my stuff over the rack. They should have known there was a problem and come get me up out of there, but they didn't." *Doc. 42-7 at 23*.

### C. Qualified Immunity

Defendants assert qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

In deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group," but must consider each Defendant's conduct to determine whether evidence against that "individual officer [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

### D. Individual Liability for Failure to Protect

Given Mr. Jones' pretrial status at the time of the inmate attack, his failure to protect claims come under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979). The Eighth Circuit has yet to establish a definitive Fourteenth Amendment standard for pretrial, failure to protect claims, claims,[6] and applies the Eighth Amendment's "deliberate indifference" standard to analyze such claims. See *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) (citing *Holden v. Hirner,* 663 F.3d 336, 341 & n. 3 (8th Cir. 2011)).

Under the deliberate indifference standard, prison officials do not commit a constitutional violation every time one prisoner attacks another. *Patterson v. Kelley,*

---

[6] In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that a pretrial detainee's excessive force claim is assessed under the Fourteenth Amendment's objective standard, which does not require proof that the defendant was subjectively aware that the force used was unreasonable. The Eighth Circuit has limited *Kingsley* to claims asserting excessive force in a pretrial setting. *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860 & n.4 (8th Cir. 2018) (distinguishing *Kingsley* as an "excessive force case" and applying deliberate indifference standard, requiring both an objective and subjective analysis, to claim that correctional officer failed to monitor and provide adequate medical care to detainee who committed suicide).

7

902 F.3d 845, 851 (8th Cir. 2018); *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007); *Blades v. Schuetzle*, 302 F.3d 801, 803-04 (8th Cir. 2002). Instead, prison officials must "take reasonable measures to abate substantial risks of serious harm, of which the officials are aware." *Blades,* 302 F.3d at 803 (quoting *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir. 1995)).

Therefore, to proceed to trial on a claim that a specific Defendant failed to protect him, Mr. Jones must come forward with evidence to allow a reasonable jury to find that: (1) he was incarcerated under conditions that, objectively, posed a substantial risk of serious harm; (2) the Defendant was subjectively aware that Mr. Jones faced a serious risk of harm; and (3) the Defendant disregarded that risk by failing to take reasonable measures to abate the risk. *Patterson*, 902 F.3d at 851 (citations omitted). "The second requirement is a subjective test; the defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 837).

Mr. Jones "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019. Deliberate indifference describes a state of mind "akin to criminal recklessness." *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). "This onerous standard requires a showing

8

'more than negligence, more even than gross negligence,' but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (quoting *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (first quote) and *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011) (second quote)).

Finally, an inmate's general fear for his safety is insufficient to establish that a defendant acted with deliberate indifference to substantial risk of serious harm. *See e.g., Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994) (an inmate's complaints regarding a "general fear for his safety" do not establish that a defendant "acted with deliberate indifference by not placing him in protective custody."); *Jones v. Wallace*, 641 Fed. Appx. 665 (8th Cir. 2016) (unpublished) (a general fear of another inmate is not sufficient to put guards on notice of a specific threat or danger).

Here, it is undisputed that the November 14, 2022 fight was a surprise, and there is no constitutional duty to prevent a surprise attack. *See Patterson*, 902 F.3d at 852*; Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010). Thus, the dispositive factual issue is whether a Defendant failed to step in sooner once the altercation began.

1. Defendant McKinnon

Mr. Jones initially alleged that Defendant McKinnon failed to move him out of D-Pod when he feared for his safety. *Doc. 2 at 6*. However, the record is

undisputed that Mr. Jones suffered no harm while he was housed in D-Pod. Nor did he remain housed in D-Pod.

In deposition, Mr. Jones testified that when he feared for his safety in C-Pod and hit the button to request a second transfer, Defendant McKinnon was responsible for responding and failed to do so. *Doc. 42-7 at 27*. Mr. Jones theorizes that Defendant McKinnon was mad at him over his earlier request to transfer out of D-Pod.[7]

Mr. Jones' unsubstantiated allegations are insufficient to create a material issue of disputed fact. See *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Mr. Jones has failed to present admissible evidence that Defendant McKinnon had reason to know that he faced a significant risk of attack by other inmates. Nor does he present any evidence that Defendant McKinnon was aware of the attack at any point before she allegedly failed to respond sooner to the call button. At most, even assuming Defendant McKinnon was responsible for responding to

---

[7] When asked how he knew that Defendant McKinnon purposely failed to answer the call button, he explained:
> Because she got mad when I was in D pod when I hit the button and didn't want to be in there. And when I told her I didn't feel safe, she told me - - she was the one who told me they were taking me to intake holding cell 1. She was talking mad; like, you could hear the aggressiveness in her voice.

*Doc. 42-7 at 27*.

Mr. Jones' call from C-Pod, she acted negligently by failing to respond to Mr. Jones' call. However, such conduct fails to rise to a constitutional level.

Because Mr. Jones has failed to create a material factual dispute as to whether Defendant McKinnon violated his constitutional rights, Defendant McKinnon is entitled to qualified immunity.

2. Defendant Burrus

Mr. Jones testified that Defendant Burrus should have assigned him to a specific bed when she moved him to C-Pod. *Doc. 42-7 at 21-22*. However, Mr. Jones concedes that he did not know any of the inmates in C-Pod and that Detention Facility staff would not have known whether Mr. Jones had any specific problems with any inmate in C-Pod. *Doc. 42-7 at 19*.

Additionally, although Mr. Jones states that Defendant Burrus should have responded more quickly to the incident, he concedes that he did not know whether Defendant Burrus was even aware of the attack. *Id. at 23*.

In the absence of any evidence showing that Defendant Burrus became aware of an attack in progress, no reasonable jury could find that Defendant Burrus was deliberately indifferent by failing to intervene in or stop the attack on Mr. Jones sooner.

Because Mr. Jones has failed to create a material factual dispute as to whether Defendant Burrus violated his constitutional rights, Defendant Burrus is entitled to qualified immunity.

3. Defendants Finch and Reed

Mr. Jones seeks to hold Defendants Finch and Reed liable based on their failure to respond to the inmate altercation in a timely manner. *Doc. 42-7 at 26*. However, he concedes that these Defendants may not have known about the incident until after it had occurred. *Id*. Again, without any evidence that Defendants Finch and Reed knew that Mr. Jones faced any substantial risk of harm, Mr. Jones cannot show that they were deliberately indifferent to any such risk.

Because Mr. Jones has failed to create a material factual dispute as to whether Defendants Finch and Reed violated his constitutional rights, Defendants Finch and Reed are entitled to qualified immunity.

4. Defendant Terry

Mr. Jones alleges that another inmate told him that Defendant Terry watched the altercation take place from a video monitor in the control booth. However, even accepting the truth of this out-of-court statement, it fails to raise an issue for trial. In deposition, Mr. Jones acknowledged that: (1) he did not know whether Defendant Terry reported the incident to anyone; and (2) he did not speak to Defendant Terry directly.

When deciding a motion for summary judgment, the Court must "base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted). Parties may not rely on inadmissible hearsay to avoid summary judgment; nor may they rely on statements that otherwise violate the Rules of Evidence, such as statements made without personal knowledge. *Id*.

Accordingly, Mr. Jones may not rely on another inmate's unsubstantiated allegations to defeat Defendants' motion for summary judgment. Without considering the hearsay evidence, Mr. Jones fails to come forward with any credible evidence that Defendant Terry had sufficient information to support a reasonable inference he faced a significant risk of harm at the time of the attack. Nor is there any evidence to suggest that Defendant Terry disregarded any serious risk of harm to Mr. Jones.

Because Mr. Jones has failed to create a material factual dispute as to whether Defendant Terry violated his constitutional rights, Defendant Terry is entitled to qualified immunity.

E. **Official Capacity Claims**

Because Mr. Jones has failed to create any genuine question of material fact regarding his constitutional claims against each Defendant, his official capacity

claims against Defendants also must be dismissed.[8]

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 40*) be GRANTED.

2. Mr. Jones' claims be DISMISSED, with prejudice.

3. The Clerk be instructed to close this case.

Dated this 7 day of November 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] Mr. Jones' claims against Defendants in their official capacity are treated as claims against Saline County. See *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 631-32 (8th Cir. 2009). In this § 1983 action, a county cannot be held vicariously liable for the actions of its employees. See *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 692-93 (1978); *Parrish*, 594 F.3d at 997. Rather, a county can be held liable only if an official county policy or widespread custom was the "moving force" behind the alleged constitutional violation. See *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012); *Jenkins*, 557 F.3d at 633.